# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **STARR INTERNATIONAL COMPANY, INC.,**<br>Baarerstrasse 101<br>CH-6300<br>Zug, Switzerland<br>           **Plaintiff,**<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br>           **Defendant.** | No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Starr International Company, Inc. ("SICO") alleges as follows:

## THE PARTIES

1. SICO is a privately held, foreign corporation incorporated in Switzerland, with its corporate headquarters at Baarerstrasse 101, CH-6300 Zug, Switzerland. SICO's employer identification number ("EIN") is 52-1198625.

2. Defendant is the United States of America.

## JURISDICTION AND VENUE

3. Plaintiff brings this complaint in accordance with the requirements of 26 U.S.C. § 7422 of the United States Internal Revenue Code, as amended (the "Code"), for recovery of Federal income taxes erroneously collected from SICO for the tax year ending December 31, 2007 (the "2007 Tax Year").

4. This Court has jurisdiction over this action under 28 U.S.C. § 1346(a).

5. Plaintiff is filing this complaint within the period of time specified in Code § 6532. On March 11, 2010, SICO filed a refund claim for the overpayment of Federal income taxes withheld by the Internal Revenue Service (the "IRS"). Plaintiff amended its refund claim on February 16, 2011, in accordance with the provisions of law in that regard, and the regulations of the IRS established in pursuance thereof. More than six months have passed since SICO filed the claim for refund, and the IRS has taken no action on the refund claim.

6. Venue for this action properly lies in the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1346(a)(1) and 1402(a)(2). SICO is a foreign corporation without a principal place of business or principal office or agency in the United States and does not file U.S. Federal income tax returns.

## GENERAL ALLEGATIONS

7. On February 16, 2011, SICO filed a timely refund claim in the amount of $21,151,745.75 for the year ended December 31, 2008 (the "2008 Tax Year") for Federal income taxes withheld on common stock dividends SICO received from American International Group ("AIG"). The IRS allowed this refund claim in its entirety and issued SICO a check in the amount of $21,151,745.75 on March 22, 2011.

8. On March 11, 2010, SICO filed a timely refund claim, amended on February 16, 2011, in the amount of $38,181,246 for the 2007 Tax Year based on the same material facts as the refund claim for the 2008 Tax Year. To date, the IRS has taken no action on the refund claim for the 2007 Tax Year.

9. SICO seeks to recover the sum of at least $38,181,246 plus statutory interest as provided by law, which sum represents an overpayment by SICO of Federal income taxes withheld and paid to the United States on dividends received for the 2007 Tax Year.

**SICO Has Always Been a Foreign Company**

10. In 1919, Cornelius Vander Starr, a U.S. individual, moved to Shanghai, China, and created American Asiatic Underwriters ("AAU"), which served as an underwriter for insurance companies. AAU had branches in Shanghai and would eventually become the foundation of Mr. Starr's insurance empire. Over the next several decades, Mr. Starr expanded his international insurance businesses throughout Latin America, the Caribbean, Cuba, the Middle East, North Africa, Asia, and Australia.

11. In 1943, Mr. Starr formed SICO as part of a reorganization of his businesses. SICO was incorporated in Panama and was created to own the insurance agencies established directly and indirectly by Mr. Starr that operated outside of the United States.

12. Since its incorporation in 1943, SICO has been an international company transacting a worldwide business through its operating subsidiaries.

13. From 1943 until 2004, SICO's management and headquarters resided in Cuba and then Bermuda.

14. SICO developed a global network of managing general insurance agencies. By 1970, SICO maintained through its subsidiaries more than 100 offices in approximately 40 countries outside of the United States.

**In the 1970s, SICO Became the Largest Shareholder of AIG**

15. From 1970 until the present, Mr. Maurice R. Greenberg has been the Chairman of the Board of Directors of SICO.

16. Mr. Greenberg was also the Chief Executive Officer and Chairman of the Board of Directors of AIG, a corporation organized under the laws of Delaware, from the company's founding in 1967 until March 2005. Under Mr. Greenberg's leadership, AIG

became the largest insurance company in the world and generated unprecedented value for its shareholders.

17. In the 1970s, SICO entered into a series of transactions that transferred all of SICO's insurance businesses to AIG. As a result of these transactions, by 1978 SICO was the largest shareholder of AIG.

18. When AIG paid dividends on its common shares, AIG withheld and paid Federal income tax to the IRS from the dividends paid to SICO.

19. SICO was not required to file Federal income tax returns.

### **SICO's Move to Ireland**

20. From July 2003 through September 2004, SICO invested substantial time and resources to effectuate changes to its structure, including moving its headquarters to Ireland. In 2004, SICO moved its headquarters to Ireland.

21. Dividend income paid by a U.S. corporation to a foreign corporation is generally subject to withholding tax of 30 percent. 26 U.S.C. §§ 881 and 1442.

22. This generally applicable withholding tax rate is subject to reduction or elimination under bilateral income tax treaties negotiated between the United States and other countries. 26 U.S.C. § 894.

23. Under the 1997 U.S.-Ireland Tax Treaty ("Convention Between the Government of the United States of America and the Government of Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains, signed on July 28, 1997"), SICO automatically qualified for a reduced withholding tax rate on dividends from AIG because SICO was a tax resident of Ireland owned predominantly by a resident charity and U.S. persons.

24. Almost all U.S. tax treaties then in effect provided for a similar reduced withholding tax rate for corporations that were tax residents of the treaty country and which were owned by a resident charity and U.S. persons.

25. During the time that SICO was a tax resident of Ireland, SICO was entitled to benefits under the 1997 U.S.-Ireland Tax Treaty.  In particular, the withholding tax rate on dividends from AIG to SICO was limited to a maximum of 15 percent, rather than the generally applicable 30 percent rate.

### Deterioration of Relationship Between SICO and AIG

26. In March 2005, Mr. Greenberg resigned from AIG amidst investigations and threats of criminal prosecution led principally by Elliot Spitzer, the New York Attorney General at that time.  These threats ultimately proved meritless.

27. In the wake of Mr. Spitzer's attack against Mr. Greenberg, animosity developed between AIG and SICO, and the two companies severed their previously close business relationship.

28. Prior to 2005, SICO had used a portion of its AIG stock holdings to fund discretionary compensation plans for the benefit of AIG executives (the "Compensation Plans"), which helped increase the value of AIG shares and the dividends paid per share.  SICO issued U.S. tax reporting forms and withheld Federal income taxes on all U.S. individuals that received distributions as part of the Compensation Plans.

29. After the deterioration of SICO and AIG's relationship, SICO discontinued the Compensation Plans and Mr. Greenberg determined to reestablish SICO's insurance business and become a competitor of AIG.

30. Contentious litigation between the two companies followed.  On July 8, 2005, SICO commenced an action against AIG for Replevin and Conversion, seeking to recover art and other property from AIG.  On September 27, 2005, AIG filed its Answer and Counterclaims, asserting seven causes of action arising from SICO's administration of the Compensation Plans for AIG executives.  In addition to requesting damages, AIG sought to gain control over SICO's Board of Directors and its 290 million AIG shares.  At the time, those shares were SICO's largest asset.  *See Starr Int'l Co. v. AIG, Inc.*, 648 F. Supp. 2d 546 (S.D.N.Y. 2009).

### SICO's Move to Switzerland

31. Around the time SICO's assets came under attack by AIG, the Starr family of companies hired a new General Counsel ("GC") who was responsible in part for ensuring that SICO's assets were protected from AIG's claims.

32. The new GC analyzed SICO's structure and its residency in Ireland.  The GC researched several other jurisdictions, including Switzerland, the United Kingdom, and the Netherlands.  The GC determined that Switzerland was the best jurisdiction to protect SICO's assets from AIG's claims.

33. Inexplicably, the 1996 U.S.-Swiss Tax Treaty ("The Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, signed on October 2, 1996") did not provide for automatic reduced withholding rates for a Swiss resident corporation owned by a resident charity and U.S. persons on dividends paid by a U.S. company, while almost all other U.S. tax treaties in effect at that time provided for such automatic reduced withholding tax rates.

34. The 1996 U.S.-Swiss Tax Treaty provides that a corporation or other person that is not automatically entitled to benefits "may, nevertheless, be granted the benefits of the Convention if the competent authority of the State in which the income arises so determines after consultation with the competent authority of the other Contracting State." Art. 22, para. 6.

35. The U.S. Department of the Treasury's Technical Explanation to the 1996 U.S.-Swiss Tax Treaty (the "Technical Explanation") states that the purpose of Article 22, paragraph 6 was to "identify investors whose residence in [Switzerland] can be explained by factors other than a purpose to derive treaty benefits." In other words, Article 22 paragraph 6 provides benefits to Swiss residents that do not meet one of the treaty's mechanical tests for automatic benefits but yet are not treaty shopping.

36. The Technical Explanation further states that "[t]he competent authority of a State will base a determination under this paragraph on whether the establishment, acquisition, or maintenance of the person seeking benefits under the Convention, or the conduct of such person's operations" constituted treaty shopping. If the owners of a corporate entity have substantial non-tax reasons for establishing its residence within Switzerland, there is no treaty shopping.

37. The benefits under the 1996 U.S.-Swiss Tax Treaty were no greater than those of the 1997 U.S.-Ireland Tax Treaty, for which SICO was automatically eligible. The reduced withholding tax rates on dividends from U.S. companies such as AIG were the same under either treaty. There was no additional tax advantage under the 1996 U.S-Swiss Tax Treaty.

38. Despite the lack of automatic benefits under the 1996 U.S.-Swiss Tax Treaty, on December 6, 2006, SICO's Board of Directors moved the management of SICO to Switzerland and made certain other changes to SICO's structure in order to better protect SICO's assets from AIG's claims.

### SICO Sought Treaty Benefits Under the 1996 U.S.-Swiss Tax Treaty From the IRS

39. On December 21, 2007, SICO requested benefits under the 1996 U.S.-Swiss Tax Treaty from the Office of Tax Treaty of the IRS, which was responsible for determining whether persons were eligible for treaty benefits in the 2007 and 2008 Tax Years.

40. SICO and the IRS engaged in protracted discussions regarding the requested treaty benefits. Between December 2007 and October 2010, SICO met with the IRS several times and submitted detailed responses to numerous requests for information.

41. On October 13, 2010, the IRS sent a letter denying SICO's request for treaty benefits.

### SICO Filed Timely Refund Claims for the 2007 and 2008 Tax Years

42. AIG withheld Federal income tax at a rate of 30 percent on dividends AIG paid to SICO for the 2007 Tax Year in the amount of $57,319,110. AIG remitted that amount to the United States on SICO's behalf as a payment of tax due.

43. AIG withheld Federal income tax at a rate of 30 percent on dividends AIG paid to SICO for the 2008 Tax Year in the amount of $42,303,491. AIG remitted that amount to the United States on SICO's behalf as a payment of tax due.

44. On March 11, 2010, SICO filed a timely refund claim for the 2007 Tax Year on Form 1120-F for the overpayment of Federal income tax. On February 16, 2011, SICO amended that claim by filing an Amended Form 1120-F with the IRS requesting a refund in the amount of $38,181,246 for the 2007 Tax Year for Federal income taxes withheld

on dividends paid to SICO by AIG, based on reduced withholding rates under the 1996 U.S.-Swiss Tax Treaty.  The name, address, and identification number appearing on that refund claim were as follows:

> Starr International Company, Inc.
> Baarerstrasse 101
> CH-6300 Zug, Switzerland
> EIN 52-1198625

45. On February 16, 2011, SICO filed a timely refund claim on Form 1120-F in the amount of $21,151,745.75 for the 2008 Tax Year for Federal income taxes withheld on dividends paid to SICO by AIG.  The refund claim for the 2008 Tax Year was based on the same material facts as the refund claim for the 2007 Tax Year.

46. On March 22, 2011, the IRS allowed SICO's refund claim for the 2008 Tax Year in its entirety and issued SICO a check in the amount of $21,151,745.75.

47. On May 28, 2014, SICO, via counsel, sent a demand for the refund for the 2007 Tax Year to the IRS.

48. To date, the IRS has taken no action on the refund claim for the 2007 Tax Year.

### The IRS Abused its Discretion

49. The IRS abused its discretion and acted arbitrarily and capriciously, and without sound basis in law or fact, when it denied SICO benefits under the 1996 U.S.-Swiss Tax Treaty:

   a. SICO and its owners had substantial non-tax reasons for moving SICO's management and headquarters to Switzerland.  SICO did not seek any additional tax benefits under the 1996 U.S.-Swiss Tax Treaty than it had automatically obtained under the 1997 U.S.-Ireland Tax Treaty.  SICO could have moved to the United Kingdom or the Netherlands and received automatic benefits under the

9

        applicable tax treaties between those countries and the United States.  SICO and its owners were not treaty shopping.

    b.    The IRS required SICO to prove that the Treasury Department inadvertently omitted provisions from the 1996 U.S.-Swiss Tax Treaty that would have automatically qualified SICO for treaty benefits.  This was an improper standard and created a burden different from, and higher than, the burden placed on other taxpayers under the 1996 U.S.-Swiss Tax Treaty.

    c.    SICO's original incorporation and structure dates back over 70 years and is irrelevant for purposes of determining whether SICO was treaty shopping when it moved its residence from Ireland to Switzerland.  SICO was and is a foreign company with substantial businesses throughout the world.  SICO paid a 30 percent withholding tax to the United States on AIG dividends for decades.

50.    The IRS also abused its discretion and acted arbitrarily and capriciously, and without sound basis in law or fact, when it failed to consult with Swiss authorities before reaching a determination, as required by the 1996 U.S.-Swiss Tax Treaty, particularly given the IRS's failure to determine the reasons, if any, for the difference between the 1996 U.S.-Swiss Tax Treaty and most other contemporaneous U.S. tax treaties.

51.    The IRS also abused its discretion and acted arbitrarily and capriciously, and without sound basis in law or fact, when it failed to issue SICO a refund for the 2007 Tax Year but issued SICO a refund for the 2008 Tax Year based on the same material facts.

## COUNT ONE
## SICO is Entitled to a Refund of Withholding Taxes
## With Respect to the 2007 Tax Year

52. SICO incorporates herein by reference and realleges all allegations in paragraphs 1-51 of this Complaint.

53. The IRS abused its discretion when it denied SICO benefits under the 1996 U.S.-Swiss Tax Treaty and failed to allow SICO's refund claim for the 2007 Tax Year. The IRS acted arbitrarily and capriciously, and without sound basis in law or fact.

54. SICO qualified for reduced withholding tax rates under the 1996 U.S.-Swiss Tax Treaty and Code §§ 881, 894, and 1442.

55. SICO is entitled to a refund of excess Federal income taxes withheld for the 2007 Tax Year in the amount of at least $38,181,246, plus statutory interest as provided by law.

## PRAYER FOR RELIEF

56. WHEREFORE, Plaintiff Starr International Company, Inc., prays that the Court enter judgment in its favor and against the United States of America for a refund of Federal income taxes withheld for the 2007 Tax Year in the amount of at least $38,181,246, plus statutory interest as provided by law, together with costs and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

57. Plaintiff demands trial by jury in this action.

Dated:  September 19, 2014

Respectfully submitted,

   /s/ Kevin M. Downing
Kevin M. Downing (D.C. Bar #1013894)
Thomas E. Zehnle (D.C. Bar #415556)
Marc J. Gerson (D.C. Bar #443256)
Andrew T. Wise (D.C. Bar #456865)
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street NW, Suite 900
Washington, DC 20005
Tel.:  (202) 626-5800
Fax:  (202) 626 5801
Email:  kdowning@milchev.com
Email:  tzehnle@milchev.com
Email:  mgerson@milchev.com
Email:  awise@milchev.com

*Attorneys for Plaintiff Starr International Co., Inc.*