UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STARR INTERNATIONAL COMPANY, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | Case No. 14-cv-01593 (CRC) |
| **UNITED STATES OF AMERICA**, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> **STARR INTERNATIONAL COMPANY, INC.**, <br><br> Counterclaim-Defendant. | |

### MEMORANDUM OPINION

In a one-count complaint, Swiss-domiciled Starr International Company ("Starr") seeks a refund of approximately $38 million in taxes that were withheld from dividends it earned during the 2007 tax year. The refund is due, Starr claims, because the Internal Revenue Service ("IRS") erroneously determined that Starr was not entitled to a fifty-percent reduction of its dividends tax rate under the U.S.-Swiss tax treaty. The United States previously moved to dismiss Starr's complaint, arguing that the IRS's decision to deny Starr treaty benefits was not subject to judicial review because it fell within the agency's exclusive discretion and involves a non-justiciable political question. The Court denied the government's motion in a September 18, 2015 memorandum opinion. See Starr Int'l Co., Inc., No. 14–cv–01593, 2015 WL 5542545 (D.D.C. Sept. 18, 2015). In it, the Court concluded that the IRS's decision, while in a sense

"discretionary," was nonetheless reviewable because the treaty, read in conjunction with its accompanying technical explanation, provided a manageable standard for determining whether the IRS abused its discretion in denying Starr benefits. The Court further held that simply interpreting the terms of the treaty would not implicate the political-question doctrine by requiring it to wade into diplomatic affairs properly left to the executive branch.

The government now asks the Court to reconsider its prior ruling. It suggests that the Court misapprehended a key aspect of the treaty provision at issue: the requirement that the IRS "consult" with its Swiss counterparts prior to any final decision to grant treaty benefits. The government argues that separation-of-powers principles prevent the Court from forcing the IRS to consult with the Swiss authorities or dictating the outcome of any consultation because doing so would impinge on the Executive's authority to conduct foreign relations. And because consultation is a prerequisite for awarding treaty benefits, the government asserts, the Court is powerless to grant Starr the $38 million refund it seeks, or indeed any specific monetary relief in this case. The government thus asks the Court to vacate its prior ruling and dismiss Starr's complaint with prejudice.

After careful consideration of the government's motion and further oral argument on the issue, the Court will revisit certain aspects of its prior ruling. The Court's earlier decision focused primarily on whether the treaty and surrounding materials supplied a manageable standard for assessing whether Starr met certain criteria required to obtain treaty benefits. The Court reaffirms its holding that such a standard exists and that, therefore, the IRS's determination that Starr did not meet the applicable criteria is subject to judicial review. The Court also stands by its ruling that interpreting the terms of the treaty in a manner necessary to determine whether Starr met the applicable criteria would not offend the political-question doctrine.

As for the consultation requirement, the Court previously found that it was not "presently implicated" because consultation is required only before a decision to *grant* treaty benefits, whereas here the IRS *denied* benefits to Starr. Starr Int'l Co., 2015 WL 5542545, at *10. With the benefit of additional briefing and argument on what treaty consultation typically entails, the Court concludes that justice requires it to revise this finding. The Court is not particularly swayed by the government's argument—which it views as somewhat of a red herring—that the Court cannot force the IRS to consult with its Swiss counterparts. Notably, the government has never represented that the IRS would refuse to consult were the Court to determine that it abused its discretion in denying Starr treaty benefits. As government counsel finally acknowledged at oral argument, "that is not going to happen." Hr'g Tr., ECF No. 34, 42:18. So the scope of the Court's power in that regard is beside the point. More persuasive is the government's contention that the Court lacks the power to dictate the outcome of the consultation process. As the Court now understands it, the treaty consultation process is a diplomatic exercise that can affect the ultimate outcome of the decision whether to award benefits, and the extent of those benefits, in numerous ways. As such, it would impinge upon the Executive's prerogative to engage in that process if the Court were to render consultation meaningless or dictate its outcome. Yet ordering the IRS to issue Starr a specific monetary refund—prior to any consultation having taken place—would do precisely that.

Starr is not left without a potential remedy, however. Anticipating that it might reach today's result, the Court sought supplemental briefing on whether Starr could pursue a claim to set aside the IRS's decision to deny treaty benefits under the judicial-review provision of the Administrative Procedure Act ("APA"). The Court now finds that Starr may bring such a claim. Accordingly, and as explained more fully below, the Court will grant in part the government's motion for reconsideration; vacate its order granting Starr's motion to strike the government's

defenses and denying the government's motion to dismiss the complaint; and dismiss Starr's complaint without prejudice. Although the Court now holds that Starr may not pursue monetary relief in this case, it will allow Starr to amend its complaint to seek to have the IRS's decision set aside under the APA. In the interest of efficiency, the Court will also grant in part the government's motion for a scheduling order on its counterclaim against Starr, which alleges that the IRS erroneously issued Starr a refund for the 2008 tax year on the basis of an improperly submitted return. Countercl. ¶ 1.

## I.     Standard of Review

Rule 54(b) of the Federal Rules of Civil Procedure, under which the government seeks review of the Court's prior order, "allows a litigant to move for reconsideration or modification of [such] order[s] . . . 'at any time' before the court's entry of final judgment." Cobell v. Jewell, 802 F.3d 12, 19 (D.C. Cir. 2015) (quoting Fed. R. Civ. P. 54(b)). Although Rule 54(b) does not specify the standard of review applicable to motions for reconsideration of interlocutory orders, a district court may grant such motions "as justice requires." United States v. Slough, 61 F. Supp. 3d 103, 107 (D.D.C. 2014) (quoting United States v. Coughlin, 821 F. Supp. 2d 8, 18 (D.D.C. 2011)). Justice may require revision when the Court has "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (quoting Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)).

## II.    Analysis

The Court reaffirms its earlier holding that, properly presented, "whether the IRS misinterpreted federal law in denying [Starr] a tax refund under the Convention . . . is a justiciable

issue." Starr Int'l Co., 2015 WL 5542545, at *11. It also stands by its analysis that the U.S.-Swiss treaty, read in concert with its accompanying technical explanation, supplies a manageable standard for reviewing the IRS's decision.[1] Id. The Court agrees with the government, however, that it cannot preordain the result of the consultation process between the United States and Switzerland, which functions as a prerequisite to the granting of treaty benefits. Therefore, even if Starr demonstrates that "[t]he IRS abused its discretion when it denied [Starr] benefits under the 1996 U.S.-Swiss Tax Treaty and failed to allow [Starr's] refund claim for the 2007 Tax Year" and that "[t]he IRS acted arbitrarily and capriciously, and without sound basis in law or fact," Compl. ¶ 53, Starr will not have shown that it is entitled to treaty benefits—let alone the full $38 million it seeks. Rather, all Starr will have shown is that it is entitled to a remand to the IRS to reconsider its decision in light of this Court's ruling. Accordingly, the Court will grant in part the government's motion for reconsideration and dismiss Starr's complaint without prejudice.

### A.    Reconsideration of the Treaty Consultation Process

As noted above, the Court's prior opinion was based on an incomplete picture of what the treaty consultation process entailed and thus lacked a full appreciation of the IRS's argument "that judicial review under the discretionary provision's consultation requirement would impinge on the Executive's . . . exclusive authority to 'formulate and implement foreign policy.'" Starr Int'l Co., 2015 WL 5542545, at *10 (quoting Def.'s Mot. Dismiss 32). In fact, consultation is not simply a formality; rather, it involves substantive policy and diplomatic value judgments that may affect what amount of benefits (if any) an applicant is granted. As the government now explains:

> In these consultations, the U.S. Competent Authority will give substantial weight to discussions of consistency and reciprocity so as to avoid potential damage to the

---

[1] As the Court noted in its prior opinion, "[t]echnical explanations are created by the Treasury Department during treaty negotiations and presented to the Senate for consideration during the ratification process." Id. at *7.

treaty relationship.  The competent authorities may also discuss their respective approaches in reviewing discretionary requests from similarly situated taxpayers and in some circumstances may agree on a common approach.  Specific policy concerns can also arise in these consultations, especially where the U.S. Competent Authority seeks to achieve the goal of avoiding double non-taxation . . . .

Def.'s Reply Mot. Reconsideration 5.  Consultation also provides the IRS the opportunity "to verify facts that are in the application of [a] Swiss applicant" like Starr and to reach a common understanding with the Swiss as to other relevant treaty provisions.  Hr'g Tr., ECF No. 34, 8:14–9:20.  Starr does not meaningfully contest the government's description of the process.[2]

Given the role of the consultation process, "it may very well be that the U.S. Competent Authority . . . initially [comes] to a decision preliminarily to grant benefits but ultimately, after the consultation, decides to deny benefits."  Id. at 9:21-25.  And because the treaty requires the IRS to engage in substantive consultations with its Swiss counterparts *before* benefits are conferred, it is clear to the Court, for the reasons discussed below, that it could not grant Starr treaty benefits even if Starr proved all of the allegations set out in its complaint.  The interests of justice thus require reconsideration of the Court's prior ruling.

### B. Whether Starr May Seek Monetary Relief

With its current understanding of the consultation process, the Court is now faced squarely with the question of whether it has jurisdiction to hear Starr's claim for a tax refund.  For the Court to have jurisdiction, Starr must have standing to pursue its claim.  In particular, a favorable

---

[2] Starr has instead submitted an affidavit attesting that after receiving a presentation by several of Starr's representatives and legal counsel, the responsible Swiss federal tax official "did not state or indicate any opposition to [Starr] obtaining discretionary benefits."  Pl.'s Opp'n Ex. A., Decl. of Bertil P. Lundqvist.  Even accepting Starr's representation, however, the reluctance of Swiss authorities to express a position to the company fails to demonstrate what the outcome of the consultation process would be with the participation of authorities from both countries.

decision by this Court must be able to redress the harm Starr claims to have suffered. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). If the Court is unable to award Starr the relief it seeks in the form of a tax refund—or any monetary judgment, for that matter—a favorable decision for Starr would not redress the harm it has suffered, and the Court would lack jurisdiction. In light of the Court's inability and lack of competence to predetermine the outcome of any consultation between the IRS and its Swiss counterparts, and the fact that consultation is a prerequisite to awarding treaty benefits, the Court holds that Starr may not pursue its claim for a tax refund or any other monetary relief.

Both the treaty itself and the accompanying technical explanation underscore why the Court may not either determine that Starr qualifies for treaty benefits—let alone set the specific level of benefits it is entitled to—or actually award Starr those benefits. The treaty provides that

> [a] person that is not entitled to the benefits of this Convention pursuant to the provisions of the preceding paragraphs may, nevertheless, be granted the benefits of the Convention if the competent authority of the State in which the income arises so determines *after* consultation with the competent authority of the other Contracting State.

Convention art. XXII(6) (emphasis added). The plain text of the treaty thus requires that consultation take place before benefits may be granted. And the technical explanation emphasizes that "[t]he competent authority of the source State will consult with the competent authority of the other State *before* making a determination" to award benefits. It elaborates:

> The competent authority may determine that the resident is entitled to all of the benefits of the Convention, or it may grant only certain benefits. For instance, it may grant benefits only with respect to a particular item of income . . . . Further, the competent authority may set time limits on the duration of any relief granted.

Technical Explanation of the Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income 62–63, http://www.irs.gov/pub/irs-trty/swistech.pdf (emphasis added). It appears clear, therefore, that

not only may benefits not be granted until consultation takes place, but a resulting grant of benefits may be limited in various substantive or temporal respects. To determine that Starr is entitled to a certain sum of benefits, the Court would be forced to step into the shoes of the IRS and its Swiss counterparts and effectively preordain the outcome of any consultation between the two. This a court may not do.

Just last term, the Supreme Court held that "Congress . . . has no constitutional power that would enable it to initiate diplomatic relations with a foreign nation." Zivotofsky ex rel. Zivotofsky v. Kerry, 135 S. Ct. 2076, 2086 (2015). That being so, coordinate branches of government must certainly lack the authority to dictate the contents of any diplomatic communications in which the executive branch engages. See Forest Stewardship Council-U.S. v. Office of U.S. Trade Representative, 405 F. App'x 144, 146 (9th Cir. 2010) (unpublished) ("[C]ourts lack the power to direct the executive branch's conduct of foreign negotiations directly."). Starr cites no authority to the contrary. The Court wholeheartedly agrees with Starr that "courts have the authority to construe treaties and executive agreements," even when their "decision[s] may have significant political overtones." Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986). This principle, however, does not extend so far as to allow a judge to establish the outcome of any negotiation or consultation between an executive-branch official and representatives of a foreign country.

As a result, even if Starr proves all the allegations in its complaint, the Court has no way to determine what level of treaty benefits, if any, Starr should be granted or what conditions should be imposed on an award of those benefits. It also lacks the authority, under the text of the treaty, to grant benefits to Starr without a consultation having first taken place. The Court holds that it is unable to award Starr any form of monetary relief, and Starr consequently lacks standing to pursue a tax-refund claim under 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a). Therefore, the

Court is powerless to hear Starr's tax-refund claim and will dismiss Starr's complaint without prejudice.

### C. Whether Starr May Seek Non-Monetary Relief

In its Order setting a hearing on the government's motion for reconsideration, the Court requested that the parties provide supplemental briefing on the following questions:

> (1) If, upon reconsideration, the Court again concludes that the Competent Authority's decision of October 13, 2010 to deny treaty benefits to Starr is not committed to agency discretion by law, could Starr pursue a claim under the Administrative Procedure Act ["APA"] to set aside the Competent Authority's decision, even if the Court lacked authority to grant relief in the form of a refund pursuant to 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a)?; and (2) Assuming that Starr could bring a claim under the Administrative Procedure Act to set aside the Competent Authority's decision of October 13, 2010 to deny it treaty benefits, would Starr need to amend its complaint for the Court to grant that relief or could the Court order relief based on Starr's current complaint?

Minute Order, Nov. 11, 2015. Having concluded that it lacks authority to grant Starr relief under 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a), or to award Starr any form of monetary relief, the Court now turns to the question of whether Starr could pursue a claim under the APA to set aside the Competent Authority's October 13, 2010 decision. It finds that Starr may pursue such a claim.

On this limited point, there appears to be no dispute. The government concedes that Starr "could bring a claim under 5 U.S.C. §[§ 704 and] 706(2)(A) seeking to set aside the U.S Competent Authority's determination" and that if Starr "prevailed on that claim, [it] would be entitled . . . to have the matter remanded to the U.S. Competent Authority for further action" consistent with the Court's opinion. Def.'s Suppl. Brief 2–3; see also id. at 4 ("If the Court Found that the U.S. Competent Authority Acted Arbitrarily, Capriciously, or Abused his Discretion, the Court Could Set Aside the U.S. Competent Authority's Decision and Remand Under 5 U.S.C. § 706(2)(A)."). The government's concession is understandable. The APA makes "final agency

action for which there is no other adequate remedy in a court . . . subject to judicial review." 5 U.S.C. § 704. The government concedes that the Competent Authority's decision constitutes final agency action. Def.'s Mem. Opp'n Pl.'s Mot. Strike & Supp. Mot. Dismiss Compl. 14. And if the Court were to hold that Starr could not challenge the decision through a claim brought under the tax-refund statute, then no other adequate remedy would exist, and review under the APA would be proper. Cf. Cohen v. United States, 650 F.3d 717, 736 (D.C. Cir. 2011) (en banc) (directing the district court to consider the merits of an APA claim against the IRS when plaintiffs had "no other adequate remedy at law"). Moreover, as the Court previously indicated and now reaffirms, "the discretionary provision—read in conjunction with the Technical Explanation—provides a sufficiently manageable standard for judicial review," Starr Int'l Co., 2015 WL 5542545, at *10, and would guide the Court's examination of the Competent Authority's decision.

Starr, unsurprisingly, agrees that it could bring an APA claim if the Court held that it lacked authority to award Starr a tax refund, but goes one step further by arguing that under the APA, "the Court c[ould] order the Government to return [its] money." Pl.'s Suppl. Brief 4. As the Court has explained, however, monetary relief of any sort is unavailable to Starr without improper judicial intervention into the consultation process.

Given Starr's persistence in seeking monetary relief, the government contends that essentially any amendment Starr might make to its complaint would be futile, and so the Court should deny Starr leave to amend and instead dismiss Starr's complaint with prejudice. The Court declines to assume, however, that Starr would forgo an opportunity simply to have the Competent Authority's decision set aside as arbitrary, capricious, or an abuse of discretion. Indeed, as the government recognizes, remanding to the agency for further consideration is the norm when a court sets aside an agency's action. And this relief is not illusory. Regardless of

whether the Court possesses the authority to order the IRS to engage in consultation, counsel for the IRS has represented—and the Court would fully expect—that the IRS would not decline to consult with the Swiss in the event that the Court found that the IRS abused its discretion and remanded to the IRS, and the IRS otherwise preliminarily determined that Starr qualified for treaty benefits. Hr'g Tr., ECF No. 34, 42:8-18. The Court thus will not deprive Starr of the opportunity to seek this form of relief under the APA. It will grant Starr leave to amend its complaint to bring such a claim.

### D.   The Government's Motion for a Scheduling Order

In June 2015, the government moved the Court to enter a scheduling order regarding a counterclaim that it is pursuing against Starr, seeking recovery of an allegedly erroneous tax refund paid to Starr for the 2008 tax year. See Def.'s Mot. Sched. Order 1. The government takes the position that "it is unnecessary to delay litigation related to the United States' counterclaim . . . because the factual issues related to [the] counterclaim do not overlap with those related to [Starr's] complaint." Id. at 2. The government contends that its "counterclaim will turn on the applicable statute of limitations [for recovering erroneous refunds], which, in turn, will depend on whether the Court determines that 'it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.'" Id. (quoting 26 U.S.C. § 6532(b)). Starr responds that its "2007 tax refund claim and the Government's counterclaim with respect to the 2008 tax refund involve substantially similar facts and witnesses" and that "[t]he resolution of both claims ultimately turns on the same issue: whether [Starr] was treaty shopping in 2007 when it moved to Switzerland." Pl.'s Opp'n Def.'s Mot. Sched. Order 1.

This dispute, however, is now largely beside the point. The Court need not decide whether "discovery on the timeliness of the United States' counterclaim [would] . . . overlap with discovery on [Starr's] complaint," Def.'s Reply Supp. Mot. Sched. Order 3, because discovery is

no longer at issue in connection with Starr's claim.  The Court will issue an order dismissing Starr's complaint without prejudice and allow it 21 days to file an amended complaint seeking review of final agency action under the APA, which would proceed on the basis of the administrative record and for which discovery is generally unavailable.  See Comm. of 100 on the Fed. City v. Foxx, No. 1:14-CV-01903 (CRC), 2015 WL 6406397, at *4 (D.D.C. Oct. 22, 2015). Whether or not Starr chooses to amend, the Court sees no reason to postpone the resolution of, or delay discovery on, the government's counterclaim.  It will therefore order the parties to confer and submit a joint report pursuant to Local Rule 16.3.

### III.     Conclusion

For the reasons stated above, the Court will grant in part the government's motion for reconsideration, vacate its prior order granting Starr's motion to strike and denying the government's motion to dismiss, and dismiss Starr's complaint without prejudice.  It will also grant in part the government's motion for a scheduling order, order the parties to confer and submit a joint report on the government's counterclaim pursuant to Local Rule 16.3, and set an initial scheduling conference.  The Court will allow Starr 21 days to amend its complaint to bring a claim under the APA to seek to have the IRS's decision to deny it treaty benefits set aside.

                                                                    _____
                                                                    CHRISTOPHER R. COOPER
                                                                    United States District Judge

Date:     February 2, 2016