# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STARR INTERNATIONAL COMPANY, INC.,** Plaintiff, v. **UNITED STATES OF AMERICA,** Defendant. **UNITED STATES OF AMERICA,** Counterclaim-Plaintiff, v. **STARR INTERNATIONAL COMPANY, INC.,** Counterclaim-Defendant. | Case No. 14-cv-01593 (CRC) |

## MEMORANDUM OPINION

In 2013, the IRS erroneously issued a $21 million refund to Starr International Company, Inc. for the 2008 tax year. Under the applicable statute of limitations, the Government had two years to file suit to reclaim that refund, but it failed to do so. Instead, four years after issuing the refund, the Government filed a counterclaim in this case, which Starr originally brought to recover taxes withheld for the 2007 tax year. The IRS contends that it is entitled to an extended limitations period because it was induced to issue the refund by Starr's misrepresentations of material fact. Because the Court finds that Starr made no such misrepresentations in its refund claim, it will apply the two-year statute of limitations and grant Starr's motion for summary judgment on the Government's counterclaim.

I.   **Background**

   A.  <u>Legal Background</u>

Starr International Company, Inc. ("Starr") is a privately held Swiss-based company. As with all foreign companies, Starr owes U.S. federal income taxes on dividend income attributable to stock held in U.S. corporations. Counterclaim ¶ 13. These taxes are typically withheld at a rate of 30 percent and remitted directly to the IRS. 26 U.S.C. § 1442. A tax treaty between the United States and Switzerland, however, entitles certain Swiss-resident corporations to a significant reduction in the tax rate applied to U.S.-source dividends—from 30 percent to either 5 or 15 percent. See Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income art. 10(2), Oct. 2, 1996, S. Treaty Doc. No. 105–8, https://www.irs.gov/pub/irs-trty/swiss.pdf [hereinafter "Treaty"].

A Swiss corporation automatically benefits from the Treaty if it meets one of a dozen or so enumerated criteria—for example, if it does significant business in Switzerland. See id. art. XXII. If a corporation does not qualify for an automatic reduction, it may nevertheless be granted benefits on a discretionary basis by "the competent authority of the State in which the income arises . . . after consultation with the competent authority of the other Contracting State." Id. art. XXII(6). In the case of a Swiss corporation like Starr, this means that the Office of the United States Competent Authority ("USCA") will review its request for discretionary benefits and, after mandatory consultation with the Swiss competent authority, make a final determination. An analysis of the Treaty issued by the U.S. Treasury Department—the so-called "Technical Explanation"—instructs the USCA, when reviewing requests for discretionary benefits, to consider whether the corporation acted with a "principal purpose" of obtaining treaty

2

benefits. See Dep't of the Treasury, Technical Explanation of the Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income 72, http://www.irs.gov/pub/irs-trty/swistech.pdf; see also Starr Int'l Co. v. United States, 2017 WL 3491802, at *8 (D.D.C. Aug. 14, 2017).

A taxpayer claiming a refund based on treaty benefits seeks those funds using a Form 1120-F—the general income tax return for foreign corporations. Treas. Reg. § 301.6402-3(a)(1). All Form 1120-Fs must be filed with the IRS Service Center in Ogden, Utah. See Starr's Mot. Summ. J. on Counterclaim Ex. 11, at 4 (ECF No. 80) (2008 Instructions to Form 1120-F). If the IRS denies or fails to act on the refund claim then—and only then—may the taxpayer bring suit seeking a refund in federal court. See 26 U.S.C. § 7422(a). In other words, filing a refund claim with the IRS is a jurisdictional prerequisite to seeking a refund in federal court.

Sometimes the IRS grants a refund claim but does so erroneously. When this happens, the Government generally has two years to realize its error and initiate a lawsuit to recover the refund. 26 U.S.C. § 6532(b). The statute of limitations is extended to five years, however, "if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." Id. The Government bears the burden of proving a misrepresentation of material fact in order for the five-year statute of limitations to apply. See Lane v. United States, 286 F.3d 723, 730 (4th Cir. 2002).

B. Factual Background

In December 2007, Starr filed a request with the USCA seeking discretionary benefits—specifically, a reduced rate of withholding paid on dividends it received from AIG stock—under the U.S.-Swiss Treaty. Counterclaim ¶ 16. While that request was pending, Starr filed a refund claim with the Ogden Service Center for the 2007 tax year, seeking a refund in the amount it

3

would be entitled to receive if it were eligible for the treaty benefits. Starr indicated on the front page of its Form 1120-F that the refund request was a "Protective Refund Claim" and informed the USCA that it was filing this claim. Counterclaim ¶ 20. The USCA representative who was reviewing Starr's treaty benefits eligibility request, David Kosterlitz, contacted the Ogden Service Center and instructed it not to issue a refund. Counterclaim ¶ 21.

In October 2010, the USCA issued a final determination letter denying Starr its requested treaty benefits for the 2007 tax year. Counterclaim ¶ 22. Starr then filed a refund request with the IRS for $21 million for the 2008 tax year and an amended claim for the 2007 tax year. On the first page of its 2008 Form 1120-F, next to the line indicating the amount to which Starr claimed it was owed, Starr wrote "See Statement 1," referring to an attached 5-page statement with several attachments. Starr's Mot. Summ. J. on Counterclaim Ex. 1, at 12. In the first paragraph of this statement, Starr disclosed that it had not been granted benefits by the USCA. Id. at 19. The statement went on to detail Starr's legal arguments about why it believed the USCA's determination was incorrect. Id. at 19–23. Starr also attached about 90 pages of correspondence between Starr and the USCA, including the determination letter that set forth the USCA's basis for deciding that Starr did not qualify for the benefits. Id. at 41–130.

In 2011, the IRS granted Starr's 2008 refund request and issued a refund for $21,151,745.75. Counterclaim ¶ 29. It did not act on Starr's 2007 amended claim.

In 2014, Starr filed suit in this Court seeking a refund of taxes paid for the 2007 tax year on the basis that the USCA erroneously denied its request for treaty benefits. See 26 U.S.C. § 7422; 28 U.S.C. § 1346(a)(1) (providing cause of action against United States for recovery of taxes "erroneously or illegally assessed"). The Court held that Starr's refund claim was not subject to judicial review because, in order to grant Starr its requested refund, the Court would

need to "dictate the outcome" of the Treaty's mandatory consultation with the Swiss competent authority and would thereby "impinge upon the Executive's prerogative to engage in that [consultation] process." Starr Int'l Co. v. United States, 2016 WL 410989, at *2 (D.D.C. Feb. 2, 2016). The Court nonetheless permitted Starr to amend its complaint with a claim that the USCA's determination was arbitrary and capricious under the Administrative Procedure Act ("APA"). Id. The Court ultimately ruled that the USCA's determination did not violate the APA, and Starr has appealed that ruling. Starr Int'l Co. v. United States, 2017 WL 3491802, at *17 (D.D.C. Aug. 14, 2017).

Meanwhile, in 2015, the Government amended its answer to Starr's complaint before this Court by adding a counterclaim seeking to recover the 2008 refund as erroneously issued. Citing IRS regulations, the Government contended that the USCA's denial of benefits was not administratively reviewable by the Ogden Service Center, see Rev. Proc. 2006-54 § 12.04, 2006-2 C.B. 1035, and so the Ogden Service Center did not have jurisdiction to issue the refund in the first place. As the Government recognizes, because it brought suit to recover the erroneous refund almost four years after it was issued, its counterclaim would be untimely under the default two-year statute of limitations set forth in 26 U.S.C. § 6532(b). Thus, for the Government's counterclaim to succeed, it must prove that Starr induced the IRS to issue the refund "by fraud or misrepresentation of a material fact"—only then does § 6532(b)'s extended five-year limitations period apply. Id. The parties have accordingly filed cross-motions for summary judgment on the issue of whether the Government's claim is timely.

## II. Standard of Review

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

5

law." Fed. R. Civ. P. 56(a). A factual dispute is "material" if the resolution "might affect the outcome of the suit under the governing law" and "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the Court must "examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to the nonmoving party." Robinson v. Pezzat, 818 F.3d 1, 8 (D.C. Cir. 2016) (citation omitted).

### III. Analysis

The sole issue presented in these cross-motions is whether the Government's counterclaim seeking return of the $21 million refund for the 2008 tax year is timely, given that it was filed four years after the refund was issued. The Government contends that the counterclaim is subject to § 6532(b)'s extended five-year limitations period, rather than the default two-year period, because Starr made three misrepresentations of material fact that induced the refund: (1) it indicated on line 9 of the Form 1120-F that it was entitled to a $21 million refund; (2) it failed to notify Mr. Kosterlitz at the USCA that it was filing the refund request; and (3) it failed to notify the Ogden Service Center that it lacked jurisdiction to issue a refund. The Court finds that none of these acts or omissions were material misrepresentations for purposes of the statute of limitations.

Before turning to each of these alleged misrepresentations, however, it is important to first explain the Government's underlying theory of *why* they qualify as misrepresentations. Crucial to this theory is an IRS regulation—Revenue Procedure 2006-54—which sets out procedures for requesting treaty benefits from the USCA, and specifically section 12.04 of that regulation, which makes clear that denials of discretionary treaty benefits are final and not

6

subject to administrative review. In the Government's view, section 12.04 does more than foreclose a formal administrative appeal of the USCA's determinations: it also prevents a taxpayer from filing a refund claim that does not "take that directive into account." Hr'g Tr. at 25. More particularly, while the Government concedes (for reasons explained below) that Starr acted properly in filing a refund claim in the first place, it urges that section 12.04 required Starr to construct its claim in a way that would *ensure* it would not be granted. Otherwise, Starr would be effectively seeking administrative review of the USCA's determination in violation of the regulation. Thus, according to the Government, Starr should have taken three particular precautions to ensure that the refund would not be granted, and its failure to take them amounted to misrepresentations of material fact.

This theory has a core deficiency that spells trouble for the Government's case: A refund claim cannot be naturally understood as an attempt to obtain *administrative review* of a regulatory decision related to the claimed amount. Rather, refund claims are non-adversarial mechanisms for taxpayers to seek money the IRS has withheld. And, as the Government concedes, filing a refund claim is an absolute, jurisdictional prerequisite to seeking judicial review of an IRS refund determination. 26 U.S.C. § 7422(a); see also Bartley v. United States, 123 F.3d 466, 468 (7th Cir. 1997). Specifically, while taxpayers generally have the right to sue the government in federal court for a refund of taxes "erroneously or illegally assessed or collected," see 26 U.S.C. § 7422; 28 U.S.C. § 1346, the taxpayer must submit an administrative refund claim to the IRS before filing such an action. If a taxpayer instead proceeds directly to federal court, the court will lack subject matter jurisdiction and must dismiss the action. See Cohen v. United States, 650 F.3d 717, 731 (D.C. Cir. 2011). Thus, the mere act of filing a

7

refund claim is not a "misrepresentation" in the sense that it improperly seeks administrative review of the USCA's determination.

As a result of this (proper) concession, the Government is forced to walk a more precarious line: the taxpayer may file a refund claim, yet must construct the claim in such a way so as to avoid having the refund issue—otherwise, there has been a material misrepresentation of fact in the return. That position is circular (a refund claim impermissibly seeks review of the USCA's determination whenever the refund issues) and it is unfair to taxpayers (what if, despite the taxpayer's best efforts to ensure the refund is not paid, the refund nevertheless issues?). It cannot be that section 12.04 imposes a generalized duty on taxpayers to file refund claims that will not result in refunds.

The case would be different if the taxpayer made some particular misrepresentation beyond successfully filing a refund claim—for example, by disregarding an express instruction on Form 1120-F, by ignoring a disclosure requirement created by statute or regulation, or perhaps by failing to disclose information it understood was necessary for the IRS to reach an informed decision. Specifically, if Starr had not submitted a statement accompanying its Form 1120-F explaining the USCA's denial of discretionary benefits—or its statement had omitted key information—this case would be more like Lane v. United States, 286 F.3d 723 (4th Cir. 2002). There, the Fourth Circuit found a material misrepresentation where a taxpayer in his refund claim characterized payments as "compensation" rather than "gifts," yet omitted the "critical fact that [taxpayer] thought of the payments as gifts and so characterized them on his [prior] gift tax returns." Id. at 732. This omission, the court held, was at least grossly negligent, and thus it triggered § 6532(b)'s extended limitations period. Id. at 732–33. The Government alleges no

8

similar failure here, as Starr attached a fulsome statement that repeatedly highlighted the USCA's denial.[1]

With that context, the Court will now turn to the three specific misrepresentations that the Government contends Starr made beyond merely filing a refund claim.[2]

    A. <u>First Alleged Misrepresentation: Starr Should Have Requested $0 on Its Refund or Left Line 9 Blank</u>

The Government argues that Starr's "representation on line 9 of its return that it was due a refund of over $21 million was a misrepresentation of material fact." Gov't's Cross-Mot. Summ. J. & Opp'n 33 (ECF No. 95). In the Government's view, even if Starr had to file the request to preserve its ability to seek judicial review of the USCA's treaty benefits determination, it should have either requested $0 or left line 9 of the form blank. According to the Government, taking "this precaution would have allowed [Starr] to litigate the merits of the USCA denial determination in court" without inducing the Ogden Service Center to actually issue the refund. <u>Id.</u> at 36. While it is true that requesting $0 or leaving line 9 blank may have in fact prevented the Ogden Service Center from issuing the refund, Starr's decision to note the

---

[1] The Government's theory might also be more compelling if there were evidence that Starr *knew* that the Ogden Service Center would not review the attached statement in evaluating its claim. But there is no such evidence in the record, and in its absence the Court is not willing to assume that Starr was somehow trying to game the system. Quite the contrary, the instructions accompanying Form 1120-F require the taxpayer to submit a statement along the lines of what Starr provided. <u>See</u> Starr's Mot. Summ. J. on Counterclaim Ex. 11, at 3 (ECF No. 80) (requiring corporation to attach a "statement that describes the basis for the claim for refund" and "[a]ny additional documentation to support the claim").

[2] Also coloring the disputes regarding these three alleged misrepresentations is a broader debate about what sort of mental state must accompany an action or omission for it to be a "misrepresentation." While the resolution of this question may be important in certain cases, it is not here. The Court finds that—as a matter of undisputed fact—none of Starr's actions or omissions were misrepresentations *at all*, let alone negligent, grossly negligent, or reckless ones.

9

amount it believed it was owed on line 9 of its 1120-F was not a misrepresentation of material fact.

First, Starr was required to report the full amount it believed it was owed according to the IRS's own regulations and instructions. Treasury Regulations require that refund claims "contain[] a statement setting forth the amount determined as an overpayment." Treas. Reg. § 301.6402-3(a)(5). Starr also followed the plain instructions on Form 1120-F, which ask the taxpayer to "enter amount overpaid" in line 9 of the form. Starr's Mot. Summ. J. on Counterclaim Ex. 1, at 12. Accepting the Government's argument would imply that taxpayers—many of whom are less sophisticated as Starr—should ignore this plain instruction, lest they be accused of making a misrepresentation. See Br. of Leslie Book *et al.* as Amicus Curiae Supp. Counterclaim-Def. (ECF No. 106).

The surrounding law and the Government's litigation strategy in other cases also illustrate why it would have been imprudent for Starr to ask for a refund of $0 or leave line 9 blank. The Government has argued in other cases that a taxpayer cannot ask for more than they initially requested in the refund request if they are later successful in challenging the IRS's determination. This argument is drawn from the "variance doctrine," which is based on a Treasury Regulation that prohibits judicial consideration of any basis for a refund that was not raised at the time the refund was requested. Treas. Reg. § 301.6402-2(b)(1) ("No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period."); see Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1367 (Fed. Cir. 2013) (holding that "new claims or theories raised subsequent to the initial refund claim are not permitted where they substantially vary from the theories initially raised in the

10

original claim for refund"); Smith v. United States, 2006 WL 1984646, at *5 (W.D. Pa. July 13, 2013) (Government arguing that a court may not award a greater amount than sought in the claim for refund). The Government has also challenged taxpayers' ability to obtain refunds where they did not list the amount to be refunded. See, e.g., Wagner v. United States, 2003 WL 691029, at *5 (M.D. Fl. Jan. 21, 2003) (holding taxpayer's refund claim invalid because it failed to list an amount to be refunded).[3] Based on the Government's previous litigation strategy, it would have been irresponsible for Starr to request $0 or leave line 9 blank—either action may have precluded it from later seeking $21 million if this Court (or an appeals court) had ruled in its favor on the treaty benefits issue.

The Government argues that to counter this effect, Starr could have included attachments explaining *why* it put $0 on line 9. Gov't's Reply Supp. Mot. Summ. J. on Counterclaim 13 (ECF No. 102). At least in theory, this would have prevented a court from applying the variance doctrine to preclude Starr from receiving a refund to which it was entitled. But regardless of whether it had included an explanation, Starr would have ended up in one of the following positions had it written $0 on line 9: (1) the IRS would "grant" the $0 request, in which case Starr has no further right to seek the $21 million it believes it is owed; or (2) the IRS would deny the refund claim, in which case it could at least argue (as it has in the past) that Starr cannot seek

---

[3] The Government has also taken the position that a taxpayer cannot ask for a higher refund than the initial request after the time for filing a refund claim has expired. For instance, in Keneipp v. United States, 184 F.2d 263 (D.C. Cir. 1950), the Government sought to invalidate a taxpayer's second refund claim filed outside the limitations period, which added to an original refund claim filed within the limitations period. Id. at 267. Though the D.C. Circuit rejected this position, it is another example of the Government challenging a taxpayer's ability to recover more than it claimed in its initial, timely refund request.

more than it initially requested. Either way, Starr would have risked not being able to receive its $21 million refund had a court agreed that it was entitled to treaty benefits.

In the end, the amount of money Starr requested on line 9 reflects Starr's colorable legal position on what it is owed—a position that Starr supported with a thorough statement explaining the basis for its claim. While it is possible to imagine situations where the dollar amount requested on line 9 would be a material misrepresentation (*e.g.*, a taxpayer subjectively believed she was owed $1,000 but instead requested $150,000), here it is not. Starr simply stated the amount it would be owed if it ultimately obtained treaty benefits through this litigation. And Starr's position was (and continues to be) that it is entitled to those benefits. The IRS is of course free to disagree and decline to issue the refund, but Starr's legal position that it was entitled to that refund despite the USCA's decision was not a misrepresentation of a fact. Under the Government's theory, a taxpayer would be misrepresenting a material fact every time she asked for a refund the Government believed she was not entitled to. And if that were so, there would be no need for an extended limitations period for misrepresentations of material fact because every erroneously issued refund would be the product of a misrepresentation. That cannot be right.

B. <u>Second Alleged Misrepresentation: Starr Should Have Informed the USCA that It Was Filing the 2008 Refund Request</u>

The Government next argues that Starr misrepresented a material fact by not informing the USCA (specifically, Mr. Kosterlitz, the USCA analyst handling Starr's treaty benefits request) that it had filed its 2008 refund claim with the Ogden Service Center. The Government has good reason to believe that informing Mr. Kosterlitz would have prevented the Ogden Service Center from issuing the refund because it was Mr. Kosterlitz who called the Ogden Service Center in 2010 and prevented it from issuing the 2007 refund. Starr's Mot. Summ. J. on

Counterclaim Ex. 3. However, Starr was under no legal obligation to inform the USCA that it had filed the 2008 refund claim, and its failure to do so was not a misrepresentation of material fact.

The Government urges that section 4.08 of Revenue Procedure 2006-54 imposes such a duty. That provision states:

> [1] The taxpayer must keep the U.S. competent authority informed of all *material changes* in the information or documentation previously submitted as part of, or in connection with, the request for competent authority assistance. [2] The taxpayer also must provide any *updated information* or new documentation that becomes known or is created after the request is filed and which is relevant to the resolution of the *issues under consideration*. (Emphasis added.)

Specifically, the Government argues that filing the refund claim constituted a "material change" in the information Starr had previously sent the USCA within the meaning of the first sentence of section 4.08. It also argues that the refund claim was "updated information" within the meaning of the second sentence of the regulation. The Court disagrees on both counts.

For one, the second sentence of section 4.08 does not require taxpayers to keep the USCA apprised of information after the USCA has adjudicated a request for treaty benefits, as the text explicitly refers to information relevant to "issues under consideration." When Starr filed its refund claim for 2008, the USCA had already issued its final decision, so no issues related to the USCA's benefits determination remained "under consideration." Thus, the second sentence of 2006-54 did not compel Starr to inform the USCA about its filing.

The Government argues that, nevertheless, Starr should have updated the USCA based on the first sentence of section 4.08. In its view, the 2008 refund claim was a material change "in connection with" a request for competent authority assistance because it effectively challenged the USCA's denial of benefits. This argument also fails. The regulation is clearly aimed at requiring the disclosure of changes that are relevant specifically to the USCA's decisionmaking

13

process, not to the IRS generally. And there is no suggestion that the existence of Starr's refund claim would in any way have affected the USCA's treaty benefits determination—which, as just explained, was completed by the time Starr filed its 2008 refund request. Rather, to the extent that informing the USCA would have had any effect, it would be because it would have spurred one official, Mr. Kosterlitz, to halt the payment of a refund from the Ogden Service Center. This is not the sort of disclosure that section 4.08 compels.[4]

Moreover, while the plain text of the first sentence of section 4.08 is less clear than the second sentence with respect to the timing of required disclosures, the regulation as a whole is more naturally read to require a taxpayer to keep the USCA apprised of material changes while it makes its determination, and not after. Forcing the taxpayer to keep the competent authority apprised of changes indefinitely—even after it has made its decision—would impose a significant burden on the taxpayer and defy common sense. The regulation therefore did not impose a duty on Starr to disclose to the USCA that it had filed its refund claim with the IRS.

> C. Third Alleged Misrepresentation: Starr Should Have Informed the Ogden Service Center That It Did Not Have Jurisdiction to Overturn the USCA's Determination and Issue the Refund

The Government's third alleged misrepresentation is that Starr did not affirmatively inform the Ogden Service Center that it lacked jurisdiction to issue the refund. But no statute, regulation, or IRS instruction requires taxpayers to inform the IRS of its own jurisdictional boundaries. And absent a duty to take this step, failing to do so is not a misrepresentation. See,

---

[4] Indeed, the Revenue Procedures themselves list the kind of "information" the USCA requires from the taxpayer. That list includes items that would help the USCA make its determination, such as a description of the issues and any prior discussions the taxpayer may have had with the IRS Appeals Office. See Rev. Proc. 2006-54 § 4.05.

14

e.g., In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993) ("[A]n omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."); Weisblatt v. Minn. Mut. Life Ins. Co., 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998) ("[A]n omission or nondisclosure is only actionable under the [tort] of negligent misrepresentation if there is a duty to speak").

Absent any concrete duty to inform the IRS of its jurisdictional limits, it would be extraordinary for the Court to invent one of its own accord. And the situation here is not so extraordinary that it warrants invention: As Starr's counsel noted in the hearing, there are numerous other contexts in which the IRS processes refund claims for which it lacks authority to actually issue a refund. For example, the IRS National Office issues "Technical Advice Memos" setting forth legal conclusions that reflect the IRS's final position on particular tax issues. Like the USCA's determination here, the conclusions in these memos are not administratively reviewable by other entities within the IRS. Treas. Reg. § 301.6110-2(f); Tax Analysts v. IRS, 117 F.3d 607, 616 (D.C. Cir. 1997). Yet when a taxpayer who has received an unfavorable Technical Advice Memo files a refund claim in order to preserve her right to appeal the adverse legal conclusion in federal court, she is under no obligation to call the IRS and tell them they do not have the authority to overturn the IRS National Office's decision. Taxpayers are not obligated to predict how the IRS's internal procedures could potentially lead it to issue an erroneous refund, and then take affirmative steps to inform the IRS of its own jurisdictional limits.

Finally, the Government does not explain *how* Starr should have informed the Ogden Service Center that it did not have jurisdiction to issue the refund. If it had included this information in the refund claim itself, it may not have made a difference: the Government

15

acknowledges that its review of Form 1120-F "consists mainly of verifying certain line items" rather than reading the return. Gov't's Cross-Mot. Summ. J. & Opp'n 19. In other words, because IRS employees were trained to only look at a very specific part of the refund claim, it is far from clear that Starr's failure to inform the Ogden Service Center that it did not have jurisdiction to issue the refund "induced" it to erroneously issue the refund. The only other alternative would have been for Starr to try to contact the Ogden Service Center some other way, such as via telephone or email, and hope the information got to the right person. It would be unreasonable to impose a duty on taxpayers to take matters into their own hands and find a way to tell the Ogden Service Center about its own regulatory limitations in order to avoid misrepresenting a material fact.

## IV. Conclusion

Starr properly completed and filed its 2008 Form 1120-F, accurately indicating the amount it believed it was due while repeatedly alerting the IRS to the fact that the USCA had denied it treaty benefits. The Ogden Service Center's erroneous payment of the refund claim does not mean that Starr misrepresented a material fact. True, Starr could have gone above and beyond its legal obligations by contacting someone who would have personally ensured that the refund would not be issued, or by risking its ability to later file a refund suit by claiming a $0 refund, or by declining to file the refund at all. But its failure to take such precautionary measures was not a misrepresentation for purposes of § 6532(b).[5] The Court will therefore apply

---

[5] Having concluded that Starr did not make any misrepresentations within the meaning of the statute, it need not resolve Starr's alternative argument that any alleged misrepresentations were immaterial to the IRS's decision to award a refund.

the standard two-year statute of limitations to the Government's counterclaim, rendering it untimely.

Accordingly, the Court will grant Starr's motion for summary judgment on the Government's counterclaim (ECF No. 80) and will deny the Government's cross-motion (ECF No. 95). A separate Order will accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>January 31, 2018</u>